UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:07-CR-64 |
| V. | ) | District Judge Greer |
| | ) | Magistrate Judge Inman |
| ERNEST WADE CANIPE | ) | |

**REPORT AND RECOMMENDATION**

The defendant is charged with being a felon in possession of a firearm. He has filed a motion to suppress evidence of a handgun and ammunition discovered during a search of his vehicle by officers of the Washington County Sheriff's Department on June 25, 2007, as well as evidence of a statement he made subsequent to his arrest [Doc. 18]. That motion was referred to the Magistrate Judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on September 5, 2007.

The only witness was Herman Hagie, an investigator with the Washington County Sheriff's Department. His testimony, none of which was contradicted, reveals the following:

On June 25, 2007, Investigator Hagie personally knew defendant. He also was aware that defendant had prior felony convictions, including one involving arson, and another for felony reckless endangerment which involved the stabbing of a deputy sheriff. On June 25, defendant's half-sister reported to the Washington County Sheriff's Department that defendant was driving their father's truck and that defendant had a firearm in his possession. A supervisor passed on this information to Investigator Hagie.

Knowing that defendant was required to report on June 25 for an appointment with his state parole officer, Hagie drove to the parole office and there observed defendant

talking with other individuals.  Investigator Hagie took up a position of surveillance and, because of his knowledge of defendant's history for violence, called for back-up assistance. Before that back-up assistance arrived, defendant got in an extended cab pick-up truck and drove off.  Hagie followed, admittedly watching closely to see if defendant committed a traffic offense so that he could be pulled over and stopped.  A relatively short distance from the parole office, defendant pulled up to a stop sign and stopped, with Hagie immediately behind.  At that point, Hagie observed that defendant was not wearing a seatbelt, which is a violation of Tennessee law. When defendant pulled out from the stop sign, Hagie activated his blue lights to pull defendant to the side.  It is unquestioned that the traffic stop was a pretext for the real reason, viz, to determine if defendant was in possession of a firearm.

Defendant exited his truck and began walking back to Hagie's vehicle, but Hagie ordered defendant to return to his own vehicle and sit in it, and defendant complied.  Hagie told defendant that he had been stopped for violating Tennessee's seatbelt law, and requested his driver's license.  Hagie then called in defendant's driver's license information to his dispatcher, as is customary, and he began filling out the traffic citation.  In the meantime, the first back-up officer, Officer Bivens, arrived. Some short time later, two other officers arrived, making a total of four officers at the scene of the traffic stop.

After Hagie had filled out the traffic citation, he gave it to defendant along with his driver's license.  He also told defendant when he was to appear in court if he wished to contest the ticket.  Hagie then asked defendant if he had "anything" in his car, and defendant answered that he did not.  Hagie asked, "Can I look?", to which defendant answered, "No problem."  After directing defendant to get out of his truck, Hagie asked permission to pat

2

defendant down both for the officer's protection and defendant's. Defendant agreed, and Hagie found a small pocket knife which he merely put out of defendant's reach pending the conclusion of the search of the truck.

Hagie testified that he "immediately" asked defendant's permission to search the vehicle after handing defendant a copy of the citation. As noted, there was no other evidence presented. Defendant's counsel extensively cross-examined Hagie regarding the time expended by Hagie in issuing the citation to defendant. Hagie testified that it was at least 10 to 15 minutes, perhaps even longer, much of that time being required to hear back from his dispatcher regarding defendant's driver's license and other information customarily reported back to an officer during the course of a traffic stop. Hagie insisted that at this time of day the dispatcher was very busy.

Investigator Hagie and Officer Bivens searched the truck; Hagie searched the passenger side of the vehicle. Hagie first noticed a small metal box on the floorboard on the passenger side. Upon opening that box, Hagie saw that it contained ammunition.

The vehicle which defendant was driving was an extended cab pick-up truck. In looking behind the passenger seat, Hagie could see the corner of another box beneath the passenger seat. Hagie flipped the seat forward to see the entire box. The top of the box revealed the name "Ruger," a well-known firearms manufacturer. Hagie opened the box and observed therein a handgun.

Defendant was arrested and transported to the sheriff's department. He was given his Miranda warning and he voluntarily agreed to make a statement.[1]

Defendant argues that the pretextual traffic stop persisted for too long, thereby

---

[1] See, Exhibit 3.

invalidating his subsequent consent to search his pick-up truck, and in any event his consent was not voluntary. He also argues that his consent to search the truck did not include the right to search any containers within it. Lastly, he argues that his otherwise voluntary statement given to the officers should be suppressed because it flowed directly from his illegal detention and the unlawful discovery of the ammunition and firearm in his truck.

The fact that Hagie's stop of defendant for a violation of the seatbelt law was a mere pretext for the real reason is not a consideration. *Whren v. United States*, 517 U.S. 806 (1996). To be sure, the temporary detention that results from a traffic stop, pretextual or otherwise, may last no longer than is reasonably necessary to effectuate the purposes of the traffic stop. In other words, "[o]nce the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *U.S. v. Hill*, 195 Fed.3d 258, 264 (6th Cir. 1999). However, there was no evidence presented at the hearing that Investigator Hagie expended more than a reasonable amount of time to write the citation. Upon handing the citation to defendant, Hagie asked permission to search the truck, which defendant gave.

Defendant next argues that his consent was not voluntary. In this regard, he argues that he merely "acquiesced" to Hagie's request to search his vehicle, and that "acquiescence is not consent," citing *U. S. v. Jones*, 641 F.2d 425, 429 (6th Cir. 1981), and *U.S. v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999).

In response to a question asked him on cross-examination, Hagie did acknowledge that defendant *acquiesced* to his request for permission to search. The question,

4

however, was something of a semantic trap.  In ordinary and common usage, "acquiesce" is synonymous with "agree."  Defendant asks this Court to conclude from Hagie's use of the word "acquiesce" that defendant was intimidated by Hagie and merely submitted to Hagie's authority.  That is too much to infer from the casual use of the word acquiesce, and it is contradicted by all the other evidence.

In the *Jones* case, it is apparent from the court's recitation of the facts that the homeowner merely submitted to a *fait accompli*; her house already was full of police officers, with their weapons drawn.  Here, Investigator Hagie asked defendant's permission to search his truck, and defendant unequivocally gave that consent.[2]  In short, the government has proven by clear and positive evidence that defendant's consent to search his vehicle was both knowledgeable and voluntary, and not the product of duress and coercion.  *Jones, supra*, at 429.

Next, defendant argues that Hagie's search exceeded the scope of the consent inasmuch as Hagie looked into sealed containers (the metal box and the Ruger box) that were in the passenger compartment.  He says that Hagie merely asked if he could "look in" his truck, which is something less than a request to search.  Again, defendant places far too much emphasis on a particular word or phrase commonly used.  "Look in" would be understood by most people to involve a search.  The logical end of defendant's argument would be that Hagie had the right only to peer through the truck window into the interior.  In short, Hagie's question "plainly sought [defendant's] permission to search the vehicle." *U.S. v. Erwin*, 155 F3d 818, 823 (6th Cir. 1998)

---

[2] Defendant has prior criminal convictions, and therefore he is no stranger to the police or the criminal justice system.  It defies common sense that he meekly "acquiesced" because he was intimidated by Investigator Hagie.

Further, defendant did not in any way limit his consent to Investigator Hagie regarding the search of the vehicle. A general consent to search a vehicle includes any compartments or containers within that vehicle. *See, e.g., U.S. v. Fowler*, 1994 WL 685417, at *6, (6th Cir. 1994).

Lastly, defendant argues that his statement given to the officer subsequent to his arrest should be suppressed because that statement would not have been given had he not been arrested, and that he would not have been arrested had the ammunition and firearm in his truck not been discovered. Inasmuch as there is no basis upon which to suppress evidence of the ammunition and firearm found in defendant's truck, there is no basis to suppress his statement which was otherwise completely voluntary and given after being advised of his constitutional rights.

In conclusion, it is respectfully recommended that defendant's motion to suppress be DENIED.[3]

Respectfully Submitted:

  s/ Dennis H. Inman
DENNIS H. INMAN
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).